OPINION OF THE COURT
Chief Judge Cooke.
The subject of contention in this litigation is a valuable 17-story office building, located at 79 Madison Avenue in Manhattan. In dispute is the propriety of a complex series of transactions that had the net effect of permitting defendants, who were outside investors, to gain ownership of the *563 property and to eliminate the ownership interests of plaintiffs, who were minority shareholders of the corporation that formerly owned the building. This was achieved through what is commonly known as a “two-step” merger: (1) an outside investor purchases control of the majority shares of the target corporation by tender offer or through private negotiations; (2) this newly acquired control is used to arrange for the target and a second corporation controlled by the outside investor to merge, with one condition being the “freeze-out” of the minority shareholders of the target corporation by the forced cancellation of their shares, generally through a cash purchase. This accomplishes the investor’s original goal of complete ownership of the target corporation.
Since 1955, the office building was owned by 79 Realty Corporation (Realty Corporation), which had no other substantial assets. About two thirds of Realty Corporation’s outstanding shares were held by two couples, the Kimmelmans and the Zauderers, who were also the company’s sole directors and officers. Plaintiffs owned 26% of the outstanding shares. The remaining shares were owned by persons who are not parties to this litigation.
Defendants, a consortium of investors, formed a limited partnership, known as Madison 28 Associates (Madison Associates), for the purpose of purchasing the building. In March 1980, Madison Associates began negotiations with the Kimmelmans and the Zauderers to purchase the latter’s controlling block of stock at a price equal to its proportion of the building’s value, agreed in June 1980 to be $6,500,000. In addition, Madison Associates promised that it would also offer to purchase plaintiffs’ stock under the same terms within four months of the closing of the stock purchase agreement in September 1980.
Madison Associates formed a separate, wholly owned company, 28 Williams Street Corporation (Williams Street), to act as the nominal purchaser and owner of the Kimmelman and Zauderer interests. The stock purchase agreement was actually signed by Williams Street and its principal asset was the newly acquired shares of Realty Corporation.
*564 Upon selling their shares, the Kimmelmans and the Zauderers resigned their positions with Realty Corporation and were replaced by four partners of Madison Associates. Now acting as the controlling directors of Realty Corporation on October 17, 1980, the partners of Madison Associates approved a plan to merge Realty Corporation with Williams Street, Realty Corporation being the surviving corporation. Together with a notice for a shareholders meeting to vote on the proposed merger, a statement of intent was sent to all shareholders of Realty Corporation, explaining the procedural and financial aspects of the merger, as well as defendants’ conflict of interest and the intended exclusion of the minority shareholders from the newly constituted Realty Corporation through a cash buyout. Defendants also disclosed that they planned to dissolve Realty Corporation after the merger and thereafter to operate the business as a partnership. The merger plan did not require approval by any of the minority shareholders.
The merger proposed by the directors was approved at the shareholders meeting, held on November 7,1980. As a result, the office building was owned by the “new” Realty Corporation, which, in turn, was wholly owned by Madison Associates. In accordance with the merger plan, Realty Corporation was dissolved within a month of the merger and its principal asset, title to the building, devolved to Madison Associates.
From the outset, plaintiffs resisted their exclusion from Realty Corporation. First, they rejected overtures by Madison Associates to purchase their shares. Then they unsuccessfully sought to enjoin the sale of the Kimmelman and Zauderer interest to Madison Associates.
The plaintiffs instituted this action on October 31,1980, initially seeking to enjoin the shareholders meeting called to approve the merger. Failing to temporarily enjoin the Realty Corporation’s merger with Williams Street, plaintiffs later amended their complaint to include a request for equitable relief in the form of rescission of the merger.
The propriety of the merger was contested on several grounds. It was contended that the merger was unlawful because its sole purpose was to personally benefit the *565 partners of Madison Associates and that the alleged purposes had no legitimate business benefit inuring to the corporation. Plaintiffs argue that the “business judgment” of the directors in assigning various purposes for the merger was indelibly tainted by a conflict of interest because they were committed to the merger prior to becoming directors and were on both sides of the merger transaction when consummated. Further, they assert that essential financial information was not disclosed and that the value offered for the minority’s shares was understated and determined in an unfair manner.
After a trial, Supreme Court held that the merger had been unlawful. It determined that defendants, as directors and majority shareholders of Realty Corporation, had breached their fiduciary duty owed plaintiffs in approving and executing the merger agreement, largely because of defendants’ failure to show a “strong and compelling legitimate business purpose” for the merger. The matter was set down for a hearing to determine an appropriate remedy.
The Appellate Division unanimously reversed, on the law and the facts, finding that the trial court’s decision was “devoid of factual findings either as to the basis for the conclusion that the shareholders meeting was not lawfully conducted, or whether the entire transaction involved fraud, conflict of interest, or self-dealing” (91 AD2d 530, 531). It rejected the legal standard applied by Supreme Court, holding that the proper standard was that the “[cjourts will not interfere with the proper business judgment of directors in the absence of a showing of fraud, illegality, or self-dealing * * * so long as there is some proper corporate purpose for the merger other than the forced buy-out of the minority shares” (id., at p 531). The matter was remanded for a new trial.[1]
Upon retrial, Supreme Court denied plaintiffs’ requested relief. It determined that plaintiffs had failed to demonstrate that the merger was not for a legitimate business purpose or that they had been dealt with unfairly and *566 inequitably. The court found that the merger advanced several proper corporate business purposes. It provided a means by which the corporation could attract outside capital investment for extensive repairs and renovations of the building that were needed to produce maximum rents. Certain tax advantages and the distribution of mortgage proceeds would accrue upon the ultimate dissolution of the merged corporation and transfer of the building to the partnership.
The court recognized that because the merger would advance defendants’ self-interest and plaintiffs’ shares were to be eliminated, it would have been preferable for defendants to have had independent directors or appraisers evaluate whether the merger was fair to all parties. The failure to do so, however, was not deemed fatal to the transaction if, viewed as a whole, it was fair. Thus, the court undertook its own review considering the role that defendants’ self-interest played in the merger decision, whether overreaching or bad faith were present, and the extent of disclosure of material information to plaintiffs. It also examined how the price for the minority’s shares was established and determined that defendants’ arrangement with the Kimmelmans and the Zauderers was arrived at through arm’s length negotiations and that it reflected the fair market value of the building at the time. In addition, the court noted that the price offered plaintiffs was many times the amount plaintiffs paid for the stock and greatly exceeded the stock’s book value and the corporation’s past and present earnings. The court concluded that, as a whole, the transaction was fair. As the merger also served a legitimate business purpose and was not tainted by fraud or illegality, plaintiffs’ request for rescission was denied. The Appellate Division affirmed the trial court’s decision, without opinion.
On this appeal, the principal task facing this court is to prescribe a standard for evaluating the validity of a corporate transaction that forcibly eliminates minority shareholders[2] by means of a two-step *567 merger.[3] It is concluded that the analysis employed by the courts below was correct: the majority shareholders’ exclusion of minority interests through a two-step merger does not violate the former’s fiduciary obligations so long as the transaction viewed as a whole is fair to the minority shareholders and is justified by an independent corporate business purpose. Accordingly, this court now affirms.
(A)
In New York, two or more domestic corporations are authorized to “merge into a single corporation which shall be one of the constituent corporations”, known as the “surviving, corporation” (see Business Corporation Law, § 901). The statute does not delineate substantive justifications for mergers, but only requires compliance with certain procedures: the adoption by the boards of each corporation of a plan of merger setting forth, among other things, the terms and conditions of the merger; a statement of any changes in the certificate of incorporation of the surviving corporation; the submission of the plan to a vote of shareholders pursuant to notice to all shareholders; and adoption of the plan by a vote of two thirds of the shareholders entitled to vote on it (see, generally, Business Corporation Law, §§ 902, 903).
Generally, the remedy of a shareholder dissenting from a merger and the offered “cash-out” price is to obtain the fair value of his or her stock through an appraisal proceeding (see Business Corporation Law, § 623). This protects the minority shareholder from being forced to sell *568 at unfair values imposed by those dominating the corporation while allowing the majority to proceed with its desired merger (see Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 590; Klurfeld v Equity Enterprises, 79 AD2d 124, 134; see Anderson v International Mins. & Chem. Corp., 295 NY 343, 347-350). The pursuit of an appraisal proceeding generally constitutes the dissenting stockholder’s exclusive remedy (see Business Corporation Law, § 623, subd [k]; see, also, Breed v Barton, 54 NY2d 82, 85). An exception exists, however, when the merger is unlawful or fraudulent as to that shareholder, in which event an action for equitable relief is authorized (Business Corporation Law, § 623, subd [k]; see Matter of Willcox v Stern, 18 NY2d 195, 204; Breed v Barton, 54 NY2d 82, 86, supra).[4] Thus, technical compliance with the Business Corporation Law’s requirements alone .will not necessarily exempt a merger from further judicial review.
(B)
Because the power to manage the affairs of a corporation is vested in the directors and majority shareholders, they are cast in the fiduciary role of “guardians of the corporate welfare” (Leibert v Clapp, 13 NY2d 313, 317; see Case v New York Cent. R. R. Co., 15 NY2d 150,156). In this position of trust, they have an obligation to all shareholders to adhere to fiduciary standards of conduct and to exercise their responsibilities in good faith when undertaking any corporate action, including a merger (see Pepper v Litton, 308 US 295, 306, 311; Leibert v Clapp, 13 NY2d 313, 317, supra; Matter of Baldwin Trading Corp., 8 NY2d 144,149; Kavanaugh v Kavanaugh Knitting Co., 226 NY 185, 195; Klurfeld v Equity Enterprises, 79 AD2d 124, *569 134, supra). Actions that may accord with statutory requirements are still subject to the limitation that such conduct may not be for the aggrandizement or undue advantage of the fiduciary to the exclusion or detriment of the stockholders (see Pepper v Litton, 308 US 295, 311, supra; Case v New York Cent. R. R. Co., 15 NY2d 150,156, supra; Lirosi v Elkins, 89 AD2d 903, 906).
The fiduciary must treat all shareholders, majority and minority, fairly (see Schwartz v Marien, 37 NY2d 487, 491; Katzowitz v Sidler, 24 NY2d 512, 518; Case v New York Cent. R. R. Co., 15 NY2d 150, 156-157, supra). Moreover, all corporate responsibilities must be discharged in good faith and with “conscientious fairness, morality and honesty in purpose” (see Kavanaugh v Kavanaugh Knitting Co., 226 NY 185, 193, supra). Also imposed are the obligations of candor (see Globe Woolen Co. v Utica Gas & Elec. Co., 224 NY 483, 490) and of good and prudent management of the corporation (see Gordon v Elliman, 306 NY 456, 466; Kavanaugh v Kavanaugh Knitting Co., 226 NY 185,192, supra; Weinberger v UOP, Inc., 457 A2d 701, 710 [Del]). When a breach of fiduciary duty occurs, that action will be considered unlawful and the aggrieved shareholder may be entitled to equitable relief (see Pepper v Litton, 308 US 295, 306-307, supra; Schwartz v Marien, 37 NY2d 487, 493, supra; Kavanaugh v Kavanaugh Knitting Co., 226 NY 185, 196, supra).
(C)
While noting the existence of fiduciary duties is an uncomplicated task, the same may not be said of defining precisely what is proper conduct in the context of a particular corporate transaction. In reviewing a freeze-out merger, the essence of the judicial inquiry is to determine whether the transaction, viewed as a whole, was “fair” as to all concerned. This concept has two principal components: the majority shareholders must have followed “a course of fair dealing toward minority holders” (Case v New York Cent. R. R. Co., 15 NY2d 150, 156, supra; see Dunlay v Avenue M Garage & Repair Co., 253 NY 274,279-280; cf. Lichtenberger v Long Is. Mach. Sales Corp., 71 AD2d 941, 947); and they must also have offered a fair price for the minority’s stock (see Katzowitz v Sidler, 24 *570 NY2d 512, 520, supra; Klurfeld v Equity Enterprises, 79 AD2d 124,135, supra; Schulwolf v Cerro Corp., 86 Misc 2d 292, 298).
As a general matter, a principal indicator of fair dealing is the relationship between the parties representing the corporations to be merged (see Chelrob, Inc. v Barrett, 293 NY 442, 460-461). When the directors and majority shareholders of each corporation are independent and negotiate at arm’s length, it is more likely that the negotiations will reflect the full exertion of each party’s bargaining power and the final terms of the transaction will be the best attainable. When, however, there is a common directorship or majority ownership, the inherent conflict of interest and the potential for self-dealing requires careful scrutiny of the transaction (see id., at pp 461-462; Everett v Phillips, 288 NY 227,236; Lirosi v Elkins, 89 AD2d 903, 906, supra).
Generally, the plaintiff has the burden of proving that the merger violated the duty of fairness, but when there is an inherent conflict of interest, the burden shifts to the interested directors or shareholders to prove good faith and the entire fairness of the merger (see Pepper v Litton, 308 US 295, 306, supra; Chelrob, Inc. v Barrett, 293 NY 442, 461-462, supra; Lirosi v Elkins, 89 AD2d 903, 906, supra; Weinberger v UOP, Inc., 457 A2d 701, 710 [Del], supra). The interested parties may attempt to establish this element of fair dealing by introducing evidence of efforts taken to simulate arm’s length negotiations. Such steps may have included the appointment of an independent negotiating committee made up of neutral directors or of an independent board to evaluate the merger proposal and to oversee the process of its approval (see, e.g., Schulwolf v Cerro Corp., 86 Misc 2d 292, 298, supra; Weinberger v UOP, Inc., 457 A2d 701, 709, n 7 [Del], supra). This would tend to negate a finding of self-dealing or overreaching (see Schulwolf v Cerro Corp., 86 Misc 2d, at p 298, supra; cf. Tamer Economic Assoc. v Universal Food Specialties, 87 Misc 2d 167, 181).
Fair dealing is also concerned with the procedural fairness of the transaction, such as its timing, initiation, structure, financing, development, disclosure to the independent directors and shareholders, and how the necessary *571 approvals were obtained (Weinberger v UOP, Inc., 457 A2d 701, 711 [Del], supra; see Tanzer Economic Assoc. v Universal Food Specialties, 87 Misc 2d, at pp 178-179, supra; Schulwolf v Cerro Corp., 86 Misc 2d, at p 298, supra). Basically, the courts must look for complete and candid disclosure of all the material facts and circumstances of the proposed merger known to the majority or directors, including their dual roles and events leading up to the merger proposal (see Case v New York Cent. R. R. Co., 15 NY2d 150, 157, supra; Globe Woolen Co. v Utica Gas & Elec. Co., 224 NY 483, 491, supra; Tanzer Economic Assoc. v Universal Food Specialties, 87 Misc 2d, at pp 178, 181-183, supra; Schulwolf v Cerro Corp., 86 Misc 2d, at pp 295, 297-298, supra; Weinberger v UOP, Inc., 457 A2d, at pp 711-712 [Del], supra).
The fairness of the transaction cannot be determined without considering the component of the financial remuneration offered the dissenting shareholders. When the merger seeks to cancel the minority’s sharés in exchange for cash, the fiduciaries must ensure that the compensation is equitable. This duty may be satisfied when the cash-out price is reasonably related to the value that might be set by an appraisal proceeding (see Tanzer Economic Assoc. v Universal Food Specialties, 87 Misc 2d 167, 178, supra; cf. Katzowitz v Sidler, 24 NY2d 512, 519, supra).
In determining whether there was a fair price, the court need not ascertain the precise “fair value” of the shares as it would be determined in an appraisal proceeding. It should be noted, however, that the factors used in an appraisal proceeding are relevant here (see Business Corporation Law, § 623; Klurfeld v Equity Enterprises, 79 AD2d 124, 136-137, supra). This would include but would not be limited to net asset value, book value, earnings, market value, and investment value (see Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 587, supra). Elements of future value arising from the accomplishment or expectation of the merger which are known or susceptible of proof as of the date of the merger and not the product of speculation may also be considered (see Business Corporation Law, § 623, subd [h], par [4]; see, also, Weinberger v UOP, Inc., 457 A2d 701, 713 [Del], supra; Note, Reapprais *572 ing Minority Shareholder Protection in Freezeout Mergers: Weinberger v UOP, Inc., 58 St John’s L Rev 144,158-161). Evidence that an independent investment firm was retained to render a fairness opinion on the price offered to the minority may be a good means of demonstrating the price which would have been set by arm’s length negotiations (see Tanzer Economic Assoc. v Universal Food Specialties, 87 Misc 2d 167, 178, supra; Schulwolf v Cerro Corp., 86 Misc 2d 292, 298, supra; Weinberger v UOP, Inc., 457 A2d 701, 712-714 [Del], supra).
(D)
Fair dealing and fair price alone will not render the merger acceptable. As mentioned, there exists a fiduciary duty to treat all shareholders equally (see Schwartz v Marien, 37 NY2d 487, 491-492, supra). This duty arises as a concomitant to the power reposed in the majority over corporate governance (see Case v New York Cent. R. R. Co., 15 NY2d 150,156-157, supra, and cases cited therein). The fact remains, however, that in a freeze-out merger the minority shareholders are being treated in a different manner: the majority is permitted continued participation in the equity of the surviving corporation while the minority has no choice but to surrender their shares for cash. On its face, the majority’s conduct would appear to breach this fiduciary obligation.
Majority shareholders, however, have an overriding duty to provide good and prudent management, which demands that decisions be made for the welfare, advantage, and best interests of the corporation and the shareholders as a whole (see Gordon v Elliman, 306 NY 456, 466, supra; Kavanaugh v Kavanaugh Knitting Co., 226 NY 185, 194, supra; Stevens, Corporations [2d ed], § 126, pp 567-568). But, it has long been recognized in this State that, under certain circumstances, “the particular interest of the few must give way to the general interest of the many” (Matter of Niagara Ins. Co., 1 Paige Ch 258, 260; see Kavanaugh v Kavanaugh Knitting Co., 226 NY, at p 194, supra). Thus, “[departure from precisely uniform treatment of stockholders may be justified, of course, where a bona fide business purpose indicates that the best interests of the corporation would be served by such departure” *573 (Schwartz v Marien, 37 NY2d 487, 492, supra; see Katzowitz v Sidler, 24 NY2d 512, 519-520, supra; Tanzer Economic Assoc. v Universal Food Specialties, 87 Misc 2d 167, 176, 180-181, supra; Schulwolf v Cerro Corp., 86 Misc 2d 292, 297, supra; People v Concord Fabrics, 83 Misc 2d 120, 123, affd on opn below 50 AD2d 787).
 In the context of a freeze-out merger, variant treatment of the minority shareholders — i.e., causing their removal — will be justified when related to the advancement of a general corporate interest. The benefit need not be great, but it must be for the corporation. For example, if the sole purpose of the merger is reduction of the number of profit sharers — in contrast to increasing the corporation’s capital or profits, or improving its management structure — there will exist no “independent corporate interest” (see Schwartz v Marien, 37 NY2d 487, 492, supra). All of these purposes ultimately seek to increase the individual wealth of the remaining shareholders. What distinguishes a proper corporate purpose from an improper one is that, with the former, removal of the minority shareholders furthers the objective of conferring some general gain upon the corporation. Only then will the fiduciary duty of good and prudent management of the corporation serve to override the concurrent duty to treat all shareholders fairly (see Klurfeld v Equity Enterprises, 79 AD2d 124, 136, supra). We further note that a finding that there was an independent corporate purpose for the action taken by the majority will not be defeated merely by the fact that the corporate objective could have been accomplished in another way, or by the fact that the action chosen was not the best way to achieve the bona fide business objective.
In sum, in entertaining an equitable action to review a freeze-out merger, a court should view the transaction as a whole to determine whether it was tainted with fraud, illegality, or self-dealing, whether the minority shareholders were dealt with fairly, and whether there exists any independent corporate purpose for the merger.
(E)
As noted, the courts below applied the correct legal standard in concluding that the merger here was proper. *574 Plaintiffs contend that the result is not supported by the record even if that standard is used. Plaintiffs’ position, however, relies on weighing the conflicting evidence before the trial court. When this court is confronted by affirmed findings of fact, its scope of review is limited to ascertaining whether there is any evidence in the record to sustain the lower courts’ determination (see Cohen v Hallmark Cards, 45 NY2d 493, 499).
Noting that defendants had not employed any neutral committees in negotiating the merger, Supreme Court conducted its own objective review of the transaction. There is evidence in the record to support its conclusion that, viewed as a whole, the transaction was fair. Full disclosure of material information was made in the statement of intent mailed to plaintiffs who also had access to Realty Corporation’s books. The stock price was tied to the fair market value of the office building, the corporation’s only substantial asset, which was determined in arm’s length negotiations.
Without passing on all of the business purposes cited by Supreme Court as underlying the merger, it is sufficient to note that at least one justified the exclusion of plaintiffs’ interests: attracting additional capital to effect needed repairs of the building. There is proof that there was a good-faith belief that additional, outside capital was required. Moreover, this record supports the conclusion that this capital would not have been available through the merger had not plaintiffs’ interest in the corporation been eliminated. Thus, the approval of the merger, which would extinguish plaintiffs’ stock, was supported by a bona fide business purpose to advance this general corporate interest of obtaining increased capital.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur.
Order affirmed, with costs.

. Plaintiffs had commenced a separate appraisal proceeding in January 1981, which has been stayed pending resolution of the action for rescission of the merger. The Appellate Division held that the pendency of the appraisal action did not preclude the action for equitable relief.

. A merger which by majority rule forces the minority interest to give up its equity in the corporation in exchange for cash or senior securities while allowing the controlling interest to retain its equity is commonly referred to as a “freeze-out” merger. It has also been referred to as a “squeeze-out” or a “take-out” merger. Thus, in freeze-outs the *567 danger exists that “a self-interested majority stockholder or control group has ruled unfairly” thus necessitating the need for “safeguards to ensure that minority stockholders receive equal though not identical treatment” (Brudney and Chirelstein, A Restatement of Corporate Freezeouts, 87 Yale LJ 1354, 1358).

. It has been observed that corporate freeze-outs of minority interests by mergers occur principally in three distinct manners: (1) two-step mergers, (2) parent/subsidiary mergers, and (3) “going-private” mergers where the majority shareholders seek to remove the public investors (see Brudney and Chirelstein, A Restatement of Corporate Freezeouts, 87 Yale LJ, at pp 1355-1356). While the final result in a freeze-out merger is the same, it does not necessarily follow that the fiduciary duty owed by the majority to the minority stockholders will be satisfied by the same conduct in each context. Due to differences in the “relative dangerjs] of abuse and on the social value[s] of the objective served by the elimination of the minority interest” (id., at p 1359) in each of the three merger categories, different protections for the minority and varying notions of fairness may be appropriate for each (see id.). This court does not now decide if the circumstances which will satisfy the fiduciary duties owed in this two-step merger will be the same for the other categories.

. As the Appellate Division (91 AD2d 530, 531) properly held, there is no bar to a stockholder’s institution of an appraisal proceeding in addition to challenging the merger in his individual capacity by an action primarily requesting equitable relief under subdivision (k) of section 623 of the Business Corporation Law on the ground that it is fraudulent or unlawful to the shareholder (see Breed v Barton, 54 NY2d 82, 85-86; Matter of Weiss v Summit Organization, 80 AD2d 526; Matter of Menschel v Fluffy Rest., 75 AD2d 525). The appraisal action should not be dismissed on the ground that there is “another action pending” (CPLR 3211, subd [a], par 4) because the other action is not “for the same cause of action” (id.). The two claims are not identical — one seeks to enforce appraisal rights and the other, equitable relief from the merger (see Matter of Weiss v Summit Organization, 80 AD2d 526, supra; Matter of Menschel v Fluffy Rest., 75 AD2d 525, supra). The appraisal action may be stayed until the equitable action is resolved (see Matter of Menschel v Fluffy Rest., 75 AD2d 525, supra).