Bellacosa, J.
(dissenting). I dissent and vote to affirm the order of the Appellate Division which affirmed the judgment of Supreme Court fixing the fair value of petitioner Cawley’s stock at $75 per share. My particular disagreement with the reversal is that it effects as a matter of law an asset-specific accounting in what is supposed to be simply a fair value appraisal of a minority shareholder’s stock. It would then necessitate a pro rata calculation of this minuscule asset relative to the 22,000 other shareholders.
The legal issue that separates us in this complex billion dollar corporate-financial merger is narrow. Did both lower courts correctly apply the fair value appraisal criteria of Business Corporation Law § 623 (h) (4), or must a sui generis tax factor of the kind implicated in this case be expressly *476 considered? I would say "yes” to the first question and "no” to the second.
My difficulty is discerning a sufficient legal basis to disturb as a matter of law the lower courts’ determinations. Moreover, on a practical basis, there is no manifestation on the record and no purpose to be served in concluding that the Appellate Division did not weigh all the "relevant factors” in arriving at its fair value determination under the statute.
Cawley was the treasurer of SCM at the time that Hanson Trust PLC initiated its two-step merger acquisition of SCM (see, Alpert v 28 Williams St. Corp., 63 NY2d 557, 563; Brudney & Chirelstein, A Restatement of Corporate Freezeouts, 87 Yale LJ 1354, 1356, 1358 [1978]). At the time of the merger, Cawley owned 9,539 shares of SCM common stock. All Cawley’s stock was purchased pursuant to incentive stock options ("an option granted to an individual for any reason connected with his employment by a corporation”, Internal Revenue Code § 422A [b] [26 USC]). Seven thousand of his shares were acquired five months after the initiation of the takeover, three months before Hanson sought to freeze out minority shareholders, and two days after Hanson acquired greater than a 50% controlling interest in SCM. There is no difference in class or in character between Cawley’s common stock and the over 12 million other outstanding shares of SCM common stock. The factors which Cawley parlays into a personal enhancement of his valuation treatment are the manner in which he purchased the shares and the tax consequences that emerged solely from the timing of his liquidation of his common stock.
An employer is not entitled to a trade or business expense deduction (Internal Revenue Code § 162 [26 USC]) for employee profit realized from an incentive stock option if the employee holds the shares for more than one year from the exercise of the option and more than two years from the grant of the option (Internal Revenue Code § 421 [a]; § 422A [a] [26 USC]). If the time periods are not satisfied, the employer becomes entitled to a tax deduction equal to the ordinary income compensation realized by the employee (Internal Revenue Code § 421 [b] [26 USC]; Fed Tax Regs § 1.421-5 [b] [3]; [e] [26 CFR]). By reason of forced buyout of 7,000 shares of Cawley’s common stock before he had held them for a year, Hanson-SCM acquired a pro rata tax deduction. That is the nub of this case.
*477 As the sole remaining dissenting shareholder in this appraisal action, Cawley, through careful crafting of his legal argument, argued that the fair value of his common stock is greater than the fair value of all other stock in his class because of the tax deduction which inured to the acquiring corporation. The majority acknowledges that Cawley does not otherwise contest the $75 common stock fair value determination, calling it "law of the case” (majority opn, at 472). There is no dispute that the SCM’s independent financial advisor, Goldman, Sachs & Company, advised the SCM board of directors that the common stock offerings at $70, $74 and, finally, $75 all represented fair value offers. In fact, the tender offer price of $75 per share was $29 per share more than the pretakeover announcement market price. The record reveals not a hint of contradiction of Hanson-SCM’s cogent argument before the Trial Justice that its $75 freeze-out offer was fair value because it far exceeded the market value of the stock preceding the active bidding contest, that the offer exceeded the investment value of the stock, and that net value is not an appropriate measure of fair value of an ongoing concern (record on appeal, at 40-42).
Cawley was recipient of a most generous special stock preference (option price of $21 for 5,000 shares and $32.12 for remaining 2,000) owing to his status as an insider corporate treasurer (indeed a fully informed senior management officer). He was afforded in the midst of a corporate takeover battle a guaranteed substantial profit at 350% (the option price was $53 below market price on the day he exercised it and his over-all buyout from the corporation was characterized by the trial court as a "golden parachute”). He now argues that the successor to his benefactor, Hanson-SCM, should not incidentally benefit from the tax deduction accruing as a consequence of his special treatment, and that the fair value of his common stock should be different from the $75 uncontested "law of the case”, appraiser certified, common stock fair value, and should be sweetened by the value of the corporate deduction. Business Corporation Law § 623 gives dissenting minority shareholders like Cawley a fair value appraisal remedy, not the equivalent of an accounting and a windfall to boot.
The implementation of an appraisal proceeding requires that "shares of the same class be equal in all respects to every other share of the class” (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 569; see, Katzowitz v Sidler, 24 NY2d 512, 518). *478 Business Corporation Law § 623 (h) (4) provides that in appraising stock value of a dissenting shareholder, "the court shall consider the nature of the transaction giving rise to the shareholder’s right to receive payment for shares and its effects on the corporation and its shareholders, the concepts and methods then customary in the relevant securities and financial markets for determining fair value of shares of a corporation engaging in a similar transaction under comparable circumstances and all other relevant factors.” "[I]t is well established by case law that, in our State, the elements which are to enter into such an appraisal are net asset value, investment value and market value * * * [but] the weight to be accorded to each varies with the facts and circumstances in a particular case” (Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 587 [citations omitted]).
No rigid rule exists for determining the fair value because the appraisal will necessarily have to be flexible to the "existence of a state of facts peculiar to the situation” (Matter of Fulton, 257 NY 487, 494). "It follows that all three [appraisal methods] do not have to influence the result in every valuation proceeding. It suffices if they are all considered” (Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 588, supra). Additionally, "[e]vidence that an independent investment firm was retained to render a fairness opinion on the price offered to the minority” is one means of demonstrating the price was proper (see, Alpert v 28 Williams St. Corp., 63 NY2d 557, 572, supra). "The ultimate valuation to the extent that it is confined to the issues of fact, rests largely within the discretion of the lower courts” (Matter of Endicott Johnson Corp. v Bade, supra, at 588, citing Cohen and Karger, Powers of the New York Court of Appeals § 148, at 589-590 [rev ed]).
The record here amply demonstrates that the trial court was cognizant of the fact that the tender offers made throughout these takeover proceedings far exceeded the market value of the stock prior to the initiation of the buyout. The court also had Hanson-SCM’s uncontested arguments before it regarding the investment and net asset value of the stock. Heavy reliance was placed on the fair value appraisals of the independent financial advisors Goldman, Sachs & Company. It is of no legal consequence that the Trial Justice refused to engage in tax asset accounting, because there is no error in discounting such tax consequences as "particularizations of a conscientious step-by-step analysis of relevant income account factors rather than as added aliquot valuations” (Matter of *479 Endicott Johnson Corp. v Bade, 37 NY2d 585, 591, supra). The tax consequences of Cawley’s option exercise and freeze-out-compelled distribution, together with those of the two other senior executive officers privileged to own incentive stock option shares, were among the myriad of factors that produced a merger price of $75 per share, which was by all accounts fair and generous as far as Cawley was concerned. By this analysis, I do not propose that the courts "ignore” or "refuse” to answer the key question; rather I say the lower courts have answered it — correctly for the parties and for New York’s business community.
Alternatively, even if we were to assume, however, that the tax factor is a mandatory relevant factor under the Business Corporation Law § 623 "catch all” — cogent legislative history and close analysis of the law and evidence here suggest that is not necessarily so — and even if we were to assume further that the lower courts did not consider that factor at all, I still arrive at the same result. A remittal for what is likely to be a relatively fruitless exercise should produce no or de minimis effects in this case. The tax asset acquired by Hanson-SCM from the buyout of Cawley’s stock must be given specific recognition under the majority’s holding and must be spread equally among all common stock shareholders. This would result in an increase in value of 1.3 cents per share ($163,041 12,172,340 shares — 1.3 cents [this calculation is made, of course, on the only shares for which appraisal is sought— Cawley’s — and will no doubt be the subject of proof by the contending accountants at the trial]). The holding that the corporate tax benefits, derived from the freeze out of all incentive stock option shares, be accounted for and then calculated pro rata as among all of SCM’s former shareholders with Cawley being awarded his proportionate share grants relief never requested by Cawley and also necessarily deals with the fair value of common stock of nondissenting shareholders. This was not within the purview of Cawley’s Business Corporation Law § 623 fair value proceeding and functionally grants a kind of class action relief.
Only Cawley’s shares (7,000 out of 12 million) are really involved, and not all stock and shareholders, as is required, are really affected by Cawley’s "red herring”, "relevant” factor. Individualization of this kind of tax consideration could not have realistically been intended by the Legislature and it seems to me may be fraught with mischief and impracticality. The holding in this case may flip like proceedings into full *480 scale accountings, with all the delay, uncertainty and speculation of such matters (see, Johnson v Manhattan & Bronx Surface Tr. Operating Auth., 71 NY2d 198; Matter of Lanzano v City of New York, 71 NY2d 208). The Business Corporation Law § 623 remedy is supposed to be relatively fast and summary, which is why jury trial is forbidden. That procedural goal wdll be negated or at least frustrated by the interpretation given the statute in this case as applied to the numerous vexatious cases sure to be generated.
I agree with the majority that Cawley is not entitled to an increase in the fair value of his common stock equal to the difference between the ordinary income tax treatment of the profits from his stock and the capital gains treatment he would have received had he held the stock for more than the six-month capital gains period.
Both irrelevant tax factors were correctly excluded or discounted from this fair value determination by the courts below, and I would affirm.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone and Hancock, Jr., concur with Judge Simons; Judge Bellacosa dissents and votes to affirm in a separate opinion.
Order reversed, with costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.