OPINION OF THE COURT
Simons, J.
 The issues presented in this stock appraisal proceeding under Business Corporation Law § 623 (h) (4) are: (1) whether, in assessing the fair value of SCM Corporation stock, the courts below abused their discretion by disregarding the tax deduction that SCM became entitled to upon the consummation of its merger with HSCM Merger Company, Inc. and, if so, (2) whether the value of this postmerger factor should have been distributed equally among all of SCM’s stockholders or solely to those stockholders whose shares were responsible for this tax advantage. We hold dissenting shareholders are entitled to receive fair value for their securities as determined by a consideration of all relevant factors, including the prospective, nonspeculative tax benefits accruing to the acquired corporation from the merger. Furthermore, because each share of stock within a given class must be treated equally, the tax advantages attendant to corporate actions must be distributed proportionately among all shareholders in calculating fair value and the dissenters (in this case petitioner is the only dissenter) given their aliquot share of the benefit. Accordingly, we reverse the Appellate Division order and remit the matter for a hearing.
The present dispute arises out of the March 31, 1986 merger between SCM and HSCM, two New York corporations, whereby SCM became an indirect wholly owned subsidiary of *468 Hanson Trust PLC.[1] SCM is a multinational company engaged in the production of chemicals, coatings and resins, paper products, foods and typewriters whose common stock, prior to the merger, was traded on the New York and Pacific Stock Exchanges. Through its subsidiaries, Hanson renders various services, and manufactures and supplies a diverse line of products, including bricks, building materials, construction equipment, food processing and footwear. Its ordinary shares are traded on the London Stock Exchange.
Hanson began a hostile tender offer for all outstanding shares of SCM common stock (par value $5 per share) on August 26, 1985 by offering $60 per share in cash, over $14 per share higher than the preannouncement market price for SCM’s stock. SCM’s board of directors had previously recommended that such an offer be rejected as inadequate. On September 3, 1985, SCM announced it had executed a merger agreement with Merrill Lynch Capital Markets, providing for the leveraged buyout of SCM by Merrill Lynch and senior members of SCM’s management for $70 per share in cash and subordinated debentures (junk bonds) on a fully diluted basis. SCM’s financial advisor, Goldman, Sachs & Company, informed the SCM board that in its opinion this price was fair.
In response to the agreement between SCM and Merrill Lynch, Hanson raised its takeover bid from $60 to $72 per share in cash, conditioned upon SCM’s not granting any lockup devices. SCM and Merrill Lynch, in turn, ended their prior agreement and executed a new one, providing for a leveraged buyout of SCM at $74 per share in cash and junk bonds on a fully diluted basis. Goldman, Sachs & Company approved this price as fair. SCM granted Merrill Lynch an option to purchase two of SCM’s "crown jewels”, its consumer foods and pigments divisions, for $80 million and $350 million respectively, thereby attempting to discourage Hanson from seeking control of SCM. On October 8, 1985, however, Hanson increased its tender offer price for SCM shares to $75 per share in cash, contingent upon the termination or judicial invalidation of this lock-up option. Following a Federal court order preliminarily enjoining SCM and others from exercising the lock-up option (see, Hanson Trust PLC v ML SCM Acquisition, 781 F2d 264 [2d Cir]), Hanson completed the first step of the *469 merger by purchasing over 50% of SCM’s outstanding shares at the $75 tender offer price. At that time, Hanson having wrested control of SCM’s board of directors, SCM and HSCM entered into a merger agreement under which the remaining common stock of SCM including exercised and unexercised stock options, would be purchased at $75 in cash. At a special shareholders’ meeting on March 27, 1986, the "squeeze out” merger was approved, effective March 31, 1986. In connection with the merger, Goldman, Sachs & Company again expressed its opinion that the $75 per share price was fair.
At the time of the merger, the sale of shares acquired through the exercise of stock incentive options, referred to as ISO shares, was taxed as follows. If ISO shareholders transferred their securities within one year of the exercise of their incentive stock options (or within two years of the grant of these options), the transaction constituted a "disqualifying disposition” under Federal tax law (see, 26 USC § 421 [a], [b]; § 422A [a] [1]; § 425 [c] [1]). As such, the difference between (1) the exercise price and (2) the lesser of the fair market value on the date of exercise and date of sale was treated as ordinary income to the ISO shareholder, and the remaining profit (if any) was treated as a capital gain (long-term gain if the shares were held more than six months, and short-term gain otherwise (see, 26 USC § 1222; Fed Tax Regs § 1.421-5 [b] [2], [3] [26 CFR]). If ISO shareholders held their stock beyond the holding period, the entire difference between the exercise price and fair market value on the date of sale was taxed more favorably as a long-term capital gain (see, Fed Tax Regs § 1.421-5 [a]). Concomitantly, to the extent ISO shareholders recognized ordinary income because of "disqualifying dispositions”, the issuing company was entitled to take a tax deduction in the nature of trade or business expense (26 USC §§ 162, 421 [a], [b]).
At the time of the merger, petitioner Cawley had worked at SCM for 23 years and was its treasurer. He owned 9,539 shares of SCM common stock, 7,000 of which he had bought in January 1986 by exercising his incentive stock options. Cawley rejected the $75-per-share price and commenced this proceeding, alleging the merger’s tax consequences made his 7,000 ISO shares worth much more. Cawley pointed out that the Hanson-SCM merger, which, in effect, forced him to sell his stock, entitled SCM to take a $354,437.50 tax deduction for Cawley’s ISO shares, and a $3,852,031.77 tax deduction for the remaining ISO shares because the stock was sold before the *470 end of the requisite holding period. Given the 46% corporate tax rate, SCM thus obtained a substantial posttax benefit of $163,041.25 and $1,771,934.60 respectively. Cawley asserts that these tax consequences should have been weighed in assessing fair value; and, specifically, that his ISO shares were worth $43 per share more than SCM’s common stock because SCM derived this tax benefit directly and exclusively from the ISO shares. He also asserts, that because he was forced to sell his stock prematurely, his profit from the sale of his ISO shares was subject to tax as ordinary income (not more favorably as capital gains), thereby requiring him to pay $107,100 in excess taxes.[2] Cawley urges that this too should have been considered in valuing his ISO shares. Supreme Court, New York County, dismissed Cawley’s petition seeking a determination of the fair value of his shares; the Appellate Division unanimously affirmed, without opinion.
As a threshold issue, we note that a court’s appraisal of dissenting shareholders’ interests, "to the extent that it is confined to issues of fact, rests largely within the discretion of the lower courts” (Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 588 [citing Cohen and Karger, Powers of the New York Court of Appeals § 148, at 589-590 (rev ed)]). Our decision here is confined to whether the courts below abused their discretion in disregarding the tax consequences of the Hanson-SCM merger.
Under the Business Corporation Law, two or more domestic corporations in New York can merge into a single corporation, with one of the constituent corporations surviving (Business Corporation Law § 901 [a] [1]). The board of directors of a corporation that participates in a merger must follow certain procedures in adopting a plan of merger (Business Corporation Law § 902) and in submitting it to the shareholders for their approval by a two-thirds vote (Business Corporation Law § 903). Shareholders who do not assent to the merger have the right to receive payment for the "fair value” of their shares (Business Corporation Law § 910 [a]). The remedy available to those who have perfected their status as dissenting shareholders — through compliance with the various procedures set forth in section 623 — is to enforce this right through an appraisal proceeding (Business Corporation Law § 623 [h] [4]). As we *471 noted in Alpert v 28 Williams St. Corp. (63 NY2d 557), this remedial mechanism protects minority shareholders "from being forced to sell at unfair values imposed by those dominating the corporation while allowing the majority to proceed with its desired merger” (id., at 567-568; see also, Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 590, supra; Anderson v International Mins. & Chem. Corp., 295 NY 343, 349-350). Where, as here, equitable relief based upon unlawful or fraudulent corporate action is not pursued, the appraisal proceeding is the dissenting shareholders’ exclusive remedy (see, Business Corporation Law § 623 [k]; Breed v Barton, 54 NY2d 82, 85-87; cf., Alpert v 28 Williams St. Corp., 63 NY2d 557, 568, supra).
Prior to 1982, Business Corporation Law § 623 (h) (4) prevented courts from considering postmerger factors in assessing "fair value” by expressly excluding from the calculus "appreciation or depreciation directly or indirectly induced by [the] corporate action or its proposal” (L 1982, ch 202, §9; see, Matter of Endicott Johnson Corp. v Bade, supra, at 587, 590-591). Case law held that fair value was determined by considering, as of the date of merger, net asset value, investment value and market value, and according weight to each as the facts and circumstances of a particular case dictated (Matter of Endicott Johnson Corp. v Bade, supra, at 587; Klurfeld v Equity Enters., 79 AD2d 124, 137). To assure that fair value determinations reflected the business realities of a given corporate action, the Legislature in 1982 amended paragraph (4) of Business Corporation Law § 623 (h) to provide a more expansive and flexible case-by-case approach to the valuation of shares (see, L 1982, ch 202, § 1; Bill Jacket, L 1982, ch 202, at 18-19). In fixing fair value under the statute as amended, courts must examine "the nature of the transaction giving rise to the shareholder’s right to receive payment for shares and its effects on the corporation and its shareholders, the concepts and methods then customary in the relevant securities and financial markets for determining fair value of shares of a corporation engaging in a similar transaction under comparable circumstances and all other relevant factors” (Business Corporation Law § 623 [h] [4] [emphasis added]). By including the phrase "all other relevant factors” and deleting the phrase "excluding any appreciation or depreciation directly or indirectly induced by such corporate action or its proposal”, the Legislature evinced its intent that postmerger factors enter valuation computations (see, Bill Jacket, L 1982, *472 ch 202, at 20; cf, Business Corporation Law § 1118 [fair value of interest in a close corporation excludes any element of value arising from the filing of the judicial dissolution petition under Business Corporation Law § 1104-a]). However, in amending section 623 (h) (4), the Legislature was not encouraging the abandonment of the three basic methods of valuation delineated in Endicott. Rather, it intended courts to supplement these approaches by also considering "[elements of future value arising from the accomplishment or expectation of the merger which are known or susceptible of proof as of the date of the merger and not the product of speculation” (Alpert v 28 Williams St. Corp., 63 NY2d, at 571, supra; see, Weinberger v UOP, Inc., 457 A2d 701, 713 [Del]).
Here, pursuant to CPLR 409 (b), Supreme Court made a summary determination, based upon the parties’ submissions, that no issue of fact existed regarding the fairness of the $75 price per share, basing its conclusion on the recommendations of SCM’s financial experts, the active bidding contest between Hanson and Merrill Lynch centering on a price in the low 70’s, and the trading history of the stock in the years immediately prior to the merger. The factors discussed by Supreme Court were plainly significant. The letter from Goldman, Sachs & Company demonstrated that the $75 figure was comparable to an amount that would have been set by arm’s length negotiations (see, Alpert v 28 Williams St. Corp., 63 NY2d 557, 572, supra) while the other two factors were an excellent indication of the market value for SCM stock on the day the merger was approved (see, Matter of Behrens, 61 NYS2d 179, 183, affd without opn 271 App Div 1007). In that SCM and Cawley contest only the relevancy of the tax consequences of the merger, it is law of the case that the $75-per-share figure is otherwise a fair amount (see, e.g., Martin v City of Cohoes, 37 NY2d 162, 165-166). Accordingly, we reach only the questions whether the tax deductibility of ISO shares was improperly disregarded and, if so, how an aliquot valuation of this tax benefit should be accomplished upon remittal.
Citing Matter of Endicott Johnson Corp. v Bade (37 NY2d 585, 587, supra), Supreme Court stated that the tax consequences of the acquisition were a postmerger factor not subject to valuation. Business Corporation Law § 623 (h) (4), enacted after our decision in Endicott, authorizes courts to consider and accord weight to relevant postmerger factors, *473 however, including the prospective tax benefits of a given transaction. Thus, the court should have addressed the tax benefits from the transfer of ISO shares. The deduction for acquisition of the ISO shares was, as the dissent concedes, a corporate asset of SCM, admittedly susceptible to precise calculation before the merger, that represented value to SCM and arose from the accomplishment of the merger. However, the record is silent on whether the tax deductibility of ISO shares was considered in arriving at the $75-per-share figure (cf., Matter of Endicott Johnson Corp. v Bade, 37 NY2d 585, 591, supra). In fact, SCM’s director of taxes, William V. Meltzer, averred that "this future tax benefit * * * is not properly considered an element of fair value”, indicating the tax deductibility of ISO shares was not considered at all. Upon remittal, Supreme Court should determine, among other things, whether the $75-per-share figure included consideration of the tax deductibility of ISO shares.
The next issue raised is whether the value of the tax deduction should be spread among ISO shareholders, their securities solely being responsible for the tax advantage, or should be spread equally among all shareholders of SCM common stock. Business Corporation Law § 623 does not resolve this question. On the one hand, section 623 (g) promotes uniformity of treatment by requiring the surviving corporation of a merger to offer to pay all dissenting shareholders of the same class the same price per share when that corporation makes its fair value offer. On the other hand, in support of Cawley’s position, this subdivision allows a corporation and an individual dissenting shareholder to agree upon a price for his or her shares after the former has made its fair value offer. This conflict is resolved, however, by Business Corporation Law § 501 (c) which provides that "[s]ubject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class.” Because the record indicates ISO shares were identical in all respects to SCM common stock held by the investment public, section 501 (c) mandates that ISO shareholders be treated no differently from other SCM common stockholders (see also, Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 568-569). Thus, if Supreme Court concludes that the $75 price per share did not include consideration of the deductibility of ISO shares, the tax benefits that accrued to SCM are to be spread among all of its common stockholders, *474 for calculation purposes, and petitioner is to be awarded his proportionate share of this corporate asset.3
Finally, petitioner contends that his personal income tax situation should have been considered. However, personal income tax liability is not an element of future value to SCM arising from the merger (Alpert v 28 Williams St. Corp., 63 NY2d 557, 571, supra; see, Weinberger v UOP, Inc., 457 A2d 701, 713 [Del], supra). As the Supreme Court of Delaware stated in defining fair price: "The basic concept of value under the appraisal statute is that the stockholder is entitled to be paid for that which has been taken from him, viz., his proportionate interest in a going concern. By value of the stockholder’s proportionate interest in the corporate enterprise is meant the true or intrinsic value of his stock which has been taken by the merger” (457 A2d, supra, at 713 [quoting TriContinental Corp. v Battye, 31 Del Ch 523, 74 A2d 71, 72]). Manifestly, Cawley’s $107,100 increased tax liability had no bearing on the value of SCM’s common stock and thus was properly disregarded below.
The dissenter questions the "purpose to be served” by this decision. He concedes, however, that the tax benefit respondent corporation derived from repurchasing ISO shares constituted a corporate asset. Indeed it did. Because of the tax treatment of respondent’s cost of repurchasing the ISO shares, the corporation was entitled to a deduction of more than four million dollars and a tax benefit of almost two million dollars. Petitioner contends that the statute contemplates that the fair value of his shares should reflect this corporate asset and that courts below erred interpreting the 1982 statute and a decision of this court superseded by the 1982 amendment when they failed to consider it. Although the dissenter would ignore this claim as merely an attempt to "sweeten” a "windfall”,[3]
[4] we *475 believe petitioner’s proceeding represents an appropriate request for judicial intervention to resolve a legal question of importance to New York’s business community. The dollar benefit to petitioner in the end, may be relatively small or even nonexistent, but that fact does not reflect the importance of the underlying statutory question presented by the case and could not justify our failure to answer it.
Nor have we, by our decision, unduly complicated these proceedings. Nothing in the statute or its legislative history supports the dissenter’s claim that the Legislature, in amending section 623, was concerned with a need to make the statutory remedy "fast and summary”. On the contrary, section 623 (h) gives the court plenary powers to adjudicate fair value issues (para [3]) and gives the parties broad pretrial disclosure rights to assist them in the presentation of their claims (para [4]). We assume jury trials are not permitted in these proceedings because corporate matters are traditionally equitable in nature and because difficult and technical valuation problems are commonly addressed by the court without a jury.
Accordingly, the order of the Appellate Division should be reversed and the matter remitted to Supreme Court to determine whether a summary determination was appropriate, and to reassess the fair value of SCM’s stock, in light of this decision.

. HSCM Merger Co., Inc., was an indirect wholly owned subsidiary corporation of Hanson Trust PLC and was a corporate shell used by Hanson to facilitate the merger with SCM.

. Individual income derived as capital gains is now taxed at the same rate as ordinary income (see, 26 USC former § 1202, repealed by Pub L 99-514, tit III, § 301 [a], 99 US Stat 2216).

. The relief granted is consistent with the relief demanded in petitioner’s pleading although the incremental increase in the value of petitioner’s shares after a new hearing may be less than petitioner requests. That is not a determination to be made by this court, however, and the speculative computation of the increase and its amount, recited in the dissent, is unsupported by evidence in the record or statements in the briefs.
Finally, in answer to the dissent, this proceeding is not in any sense a class action or the functional equivalent of a class action. Petitioner was the only shareholder to perfect his right to a fair valuation determination, as provided by statute, and thus he will be the only shareholder entitled to a value greater than $75 if the court finds the shares have a greater value after considering the tax benefit to the corporation.

. We would note that the exercise of stock options, earned long before *475 merger was contemplated, and the valuation of shares purchased under them, has nothing to do with "golden parachutes” and the trial court did not so characterize this transaction.