In the Matter of EDWARD MURPHY et al., Respondents-Appellants, v UNITED STATES DREDGING CORPORATION, Appellant-Respondent, et al., Respondents. [903 NYS2d 434]—

In a corporate dissolution proceeding, United States Dredging Corporation appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Nassau County (Warshawsky, J.), entered January 30, 2009, as, upon two decisions of the same court dated May 19, 2008, and December 9, 2008, respectively, made after a nonjury trial, finding, inter alia, that the fair value of the petitioners' 36.77% interest in United States Dredging Corporation was the sum of $5,956,735, awarded each petitioner his or her respective share of the principal sum of $5,956,735, and the petitioners cross-appeal, as limited by their brief, on the ground of inadequacy, from so much of the same judgment as awarded each of them a share of the sum of $5,956,735, and limited the award of interest to 5% for the period from February 13, 2008, until December 9, 2008.

Ordered that the judgment is reversed insofar as appealed and cross-appealed from, on the law and the facts, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for (1) recomputation of the fair value of the petitioners' 36.77% interest in United States Dredging Corporation by disallowing the liability of $2,000,000 for the officers' pensions, and using a 6.7% pretax rate of return on working capital in the sum of $6,450,000, (2) findings of fact as to the reason for applying an interest rate of 5% for the period from February 13, 2008, until December 9, 2008, and, if warranted, the application of a different interest rate for that period, and (3) entry of an appropriate amended judgment.

In this corporate dissolution proceeding pursuant to Business Corporation Law § 1104-a, United States Dredging Corporation (hereinafter the Corporation) elected, pursuant to Business Corporation Law § 1118, to buy out the petitioners' 36.77% interest in the Corporation. The issue in this case is the fair value of the petitioners' interest. The parties agreed that the Corporation should be valued using a weighted average of its net asset value and its income value determined by the discounted cash flow method.

A nonjury trial commenced on November 27, 2007, and concluded on December 14, 2007. After a decision dated May 19,

2008, directing recomputation of fair value by the parties, the Supreme Court issued a decision dated December 9, 2008, finding that the fair value of the petitioners' collective 36.77% interest was $5,956,735.

In determining fair value pursuant to Business Corporation Law § 1118, the issue is "what a willing purchaser in an arm's length transaction would offer for petitioners' interest in the company as an operating business" (*Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 445 [1991]). The terms "fair value" and "fair market value" are used interchangeably (*id*). The valuation date is the day prior to the date on which the petition for dissolution is filed (*see* Business Corporation Law § 1118 [b]). In this case the petition for dissolution was filed on February 14, 2006. Therefore, the valuation date is February 13, 2006.

Since this case was tried by the court without a jury, the authority of this Court to review findings of fact is as broad as that of the trial court and includes the power to render the judgment it finds warranted by the facts, taking into account in a close case that the trial judge had the advantage of seeing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *O'Brien v Dalessandro*, 43 AD3d 1123 [2007]).

In determining net asset value, the Supreme Court properly limited the liability for taxes on unrealized capital gains, referred to as built-in gains, to the present value of $3,037,000. The Supreme Court made this determination based on its conclusion that the Corporation's intention was to hold its real property for a lengthy period of time (*see Eisenberg v C.I.R.*, 155 F3d 50, 58 n 15 [1998]; *Martin v Martin Bros. Container & Timber Prods. Corp.*, 241 F Supp 2d 815 [2003], *affd* 112 Fed Appx. 395 [2004], *cert denied* 544 US 904 [2005]; *Estate of Litchfield v Commissioner of Internal Revenue*, TC Memo 2009-21, 2009 WL 211421, 2009 Tax Ct Memo LEXIS 21 [2009]; *contra Estate of Jelke v C.I.R.*, 507 F3d 1317, 1332 n 43, 1333 [2007], *cert denied* 555 US —, 129 S Ct 168 [2008]; *Dunn v C.I.R.*, 301 F3d 339 [2002]). *Wechsler v Wechsler* (58 AD3d 62 [2008]), relied upon by the Corporation, is inapposite, since none of the appraisers in that case applied a discount for built-in gains based upon present value, and the Appellate Division, First Department, found that the defendant in that case "necessarily will have to sell" at least some of the assets of his corporation every year (*Wechsler v Wechsler*, 58 AD3d at 70). In the instant case, on the other hand, the petitioners' appraiser used present value, and the Corporation had sufficient cash to pay the judgment without liquidating any of the assets to which a built-in gains tax applied.

"[I]n determining fair value, a minority shareholder's stock should not be further discounted because of its minority status" (*Matter of Penepent Corp.*, 96 NY2d 186, 194 [2001]), however, in determining the fair value of a close corporation such as that at bar, "any risk associated with illiquidity of the shares" should be considered (*Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d at 446; *see Matter of Friedman v Beway Realty Corp.*, 87 NY2d 161, 171 [1995]). Accordingly, while New York law does not permit a "minority discount," it does permit a "lack of marketability" discount (*Matter of Blake v Blake Agency*, 107 AD2d 139, 149 [1985]). In this case, the Supreme Court properly applied a lack of marketability discount of 15%, on the ground that the Corporation was a close corporation. Further, contrary to the petitioners' contention, the law does not limit the application of a lack of marketability discount to the goodwill of a corporation in all instances (*see Matter of Brooklyn Home Dialysis Training Ctr.*, 293 AD2d 747 [2002]; *Hall v King*, 265 AD2d 244, 245 [1999]; *Lehman v Piontkowski*, 203 AD2d 257, 259 [1994]; *Matter of Raskin v Walter Karl, Inc.*, 129 AD2d 642, 644 [1987]; *Matter of Joy Wholesale Sundries*, 125 AD2d 310 [1986]; *Matter of Fleischer*, 107 AD2d 97 [1985]; *Matter of Blake v Blake Agency*, 107 AD2d at 149; *see also Hall v King*, 177 Misc 2d 126, 134 [1998]). Moreover, this case presents no factual circumstances under which such a limitation is appropriate.

However, in determining fair value, the Supreme Court improperly considered a liability for pensions awarded to the Corporation's officers pursuant to a resolution dated March 29, 2006, after the valuation date of February 13, 2006. Contrary to the Corporation's contention, notwithstanding that the pension obligation approved in March 2006 was discussed prior to the valuation date, it did not constitute a future event which was "known or susceptible of proof" as of the valuation date (*Matter of Miller Bros. Indus. v Lazy Riv. Inv. Co.*, 272 AD2d 166, 168 [2000] [internal quotation marks omitted]; *see Matter of Cawley v SCM Corp.*, 72 NY2d 465, 471-472 [1988]; *Alpert v 28 Williams St. Corp.*, 63 NY2d 557, 571 [1984]). The cases relied on by the Corporation to support its contention that the pension obligation should be considered are inapposite, as they involve the right of a dissenting shareholder, after a merger, to demand payment for his or her shares pursuant to Business Corporation Law § 910 (a). In those cases, unlike here, fair value is determined pursuant to Business Corporation Law § 623 (h) (4), which permits the court to consider "all other relevant factors" in determining fair value. As the Court of Appeals opined in *Matter of Cawley v SCM Corp.* (72 NY2d at 471-472), by including the phrase "all other relevant factors," "the Legislature

evinced its intent that postmerger factors enter valuation computations." Notably, however, in that case, the Court of Appeals further opined that Business Corporation Law § 1118 (b), relating to the determination of fair value for a buyout of the petitioning shareholders in a dissolution proceeding, does not include such a phrase. Business Corporation Law § 1118 (b) states that fair value is determined in a dissolution proceeding "as of the day prior to the date on which such petition was filed, exclusive of any element of value arising from such filing" of the judicial dissolution petition (*Matter of Cawley v SCM Corp.* (72 NY2d at 472). At bar, at the time of the commencement of the dissolution proceeding, each officer already had a simplified employee pension (hereinafter SEP). There is no evidence, however, that any contractual obligation existed at that time to grant them additional pensions. Thus, the Supreme Court should not have included the pension obligation in the sum of $2,000,000 as a liability of the Corporation for purposes of the valuation.

Contrary to the contention of the Corporation, the Supreme Court, in determining fair value, properly took into consideration the Corporation's short-term obligations and its plans for future real estate investments in determining that the sum of $6,450,000 should be considered "working capital." In addition, there was ample support in the record to support the Supreme Court's determination. However, we agree with the Corporation that the Supreme Court improperly determined that the expected rate of return on that sum was 10%. The Supreme Court's determination that "it would not be unreasonable to expect a 10% rate of return" was based, inter alia, on the testimony of the Corporation's president that between August 2006 and August 2007, the Corporation invested its cash primarily in stock, where it earned an annual rate of return of between 9% and 10%. However, the Corporation's appraiser testified at the trial that he estimated that the working capital should generate a pretax annual return of 6.7% and 4% after taxes. Further, the Corporation's president testified at his deposition that he was looking for a return of 6.5%, and, rather than invest in stocks, he intended to, and did, in fact, invest in real estate. Moreover, the petitioners' appraiser testified that he would not advise the Corporation to invest its working capital in stocks on the ground that such advice was not within his expertise.

Therefore, the conclusion of the Supreme Court that the expected future rate of return on $6,450,000 was 10% was contrary to the weight of the credible evidence, and, indeed, con-

trary to its own finding in its decision dated May 19, 2008, that "the 10% yield is contrary to a historic 6% rate of return." Based on the foregoing, we find that a 6.7% rate of return is supported by the evidence. Accordingly, the matter should be remitted to the Supreme Court, Nassau County, for a recalculation of income value based upon a 6.7% rate of return.

Finally, we note that, in awarding interest at an "equitable rate" pursuant to Business Corporation Law § 1118 (b), the Supreme Court applied the statutory rate of 9% (see CPLR 5004), from the valuation date to the date of entry of the judgment, except for the 11 months from February 13, 2008, until December 9, 2008, when it applied an interest rate of 5%. The Corporation's claim that these interest rates were excessive is raised for the first time in its reply brief and therefore is not properly before this Court (see Coppola v Coppola, 291 AD2d 477 [2002]).

On their cross appeal, the petitioners claim that limiting their interest to 5% for the period from February 13, 2008—60 days after conclusion of the trial—until December 9, 2008—when the decision directing entry of judgment was issued—was improper, especially since the Supreme Court made no findings of fact in support of that determination. The Supreme Court was not obligated pursuant to Business Corporation Law § 1118 (b) to impose the statutory rate of interest. Nevertheless, since the matter must be remitted to the Supreme Court, Nassau County, for a recomputation of fair value, upon remittitur, the Supreme Court should make findings of fact on this issue as well, and, if warranted, the application of a different interest rate for that period of time.

The parties' remaining contentions are without merit. Mastro, J.P., Skelos, Eng and Roman, JJ., concur. **[Prior Case History: 2008 NY Slip Op 33318(U).]**