■ In the Matter of ROBERT T. GIAIMO, for the Judicial Dissolution of EGA ASSOCIATES, INC., Respondent-Appellant, v JANET GIAIMO VITALE, Appellant-Respondent. In the Matter of ROBERT T. GIAIMO, for the Judicial Dissolution of FIRST AVENUE VILLAGE CORP., Respondent-Appellant, v JANET GIAIMO VITALE, Appellant-Respondent. [956 NYS2d 41]—

Valuation of closely held corporations is not an exact science, and it is the "particular facts and circumstances" of each case that will dictate the result (*Matter of Friedman v Beway Realty Corp.*, 87 NY2d 161, 167 [1995]).

Here, the motion court correctly held that the method of valuing a closely held corporation should include any risk associated with the illiquidity of the shares (*see Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 445-446 [1991]). It also properly rejected petitioner's contention that this Court's decision in *Vick v Albert* (47 AD3d 482 [1st Dept 2008], *lv denied* 10 NY3d 707 [2008]) limits the application of marketability discounts only to goodwill, or precludes such discounts for real estate holding companies such as the corporations at issue here. The motion court erred, however, in assessing that the marketability of the corporations' real property assets was exactly the same as the marketability of the corporations' shares (*see Seagroatt Floral*, 78 NY2d at 445-446). While there are certainly some shared factors affecting the liquidity of both the real estate and the corporate stock, they are not the same. There are increased costs and risks associated with corporate ownership of the real estate in this case that would not be present if the real estate was owned outright. These costs and risks have a negative impact on how quickly and with what degree of certainty the corporations can be liquidated, which should be accounted for by way of a discount.

Only respondent's expert, Jeffrey L. Baliban, quantified what, in his opinion, would be the appropriate DLOM discount. He employed a number of studies of reported sales that bore some related characteristics to these particular corporations. He also employed a build-up method related to anticipated costs of selling the corporation that included real estate related costs and due diligence costs arising in the sale of closely held corporations. The studies and method employed reported a DLOM range of 8% to 30%, with Baliban recommending 20%. Petitioner criticizes all of the data and methods relied upon by Baliban as inapplicable. Neither the Referee nor the motion court addressed these arguments because they never reached the issue of the quantification of the DLOM. Since the entire record is included on appeal, it is sensible and economical for us to decide this issue rather than remand the issue to the motion court for further consideration (*see Wechsler v Wechsler*, 58 AD3d 62, 77 [1st Dept 2008], *appeal dismissed* 12 NY3d 883 [2009]). We find that the build-up method, which makes calculations based upon expected projected expenses of selling a company holding real estate, best captures the DLOM applicable in this particular

case. We conclude that a 16% DLOM against the assets of both corporations is appropriate and should be applied. Since the judgments have been paid, petitioner is directed to make restitution in an amount reflecting the discount (*see* CPLR 5523).

We reject petitioner's argument that a discount for embedded capital gains taxes can never be included in assessing fair value. It is recognized by courts of this state that embedded capital gains taxes in assets held by "C" corporations will affect what a hypothetical willing purchaser, with a reasonable knowledge of the underlying facts, will pay for the corporate stock (*see Matter of Murphy v United States Dredging Corp.*, 74 AD3d 815 [2d Dept 2010]; *Wechsler v Wechsler*, 58 AD3d 62 [2008]). We also reject respondent's assertion that this Court's decision in *Wechsler* always requires that the BIG discount be calculated at 100% of the projected tax as of the date of valuation. In *Wechsler* we expressly left open issues about whether calculation methods employed by other courts to capture embedded capital gains were also proper (58 AD3d at 69). Applying a 100% discount in this case necessarily implies that following the hypothetical sale, the purchaser would immediately liquidate all of the real estate and realize the full capital gains impact. Not only is this contrary to a basic underlying assumption of fair valuation that the business will continue as an ongoing concern, but also to the motion court's finding that there is no financial reason in the foreseeable future for the properties to be sold. The BIG discount, as applied by the motion court, takes into account that the real estate will continue to be held by the corporations and will not immediately be sold even if the corporate stock is sold. Consequently, the reduction of BIG to present value appropriately adjusts for embedded capital gains taxes that will not be paid until some time in the future.

There is no basis to disturb the Special Referee's valuation of the corporations' choses in action against the estate of Edward Giaimo (*see Matter of F.P.D. Realty Corp.*, 267 AD2d 111, 112 [1st Dept 1999]). There is evidence in the record that Edward Giaimo's estate had sufficient assets to cover these claims and respondent's argument that the estate had a significant estate tax burden does nothing to disprove this evidence. Nor did petitioner support his contention that it was error to place the amounts of the choses in escrow.

There is no evidence that the Referee misread the testimony of petitioner's real estate expert. Rather, the evidence shows that the Referee rejected the expert's testimony regarding the appropriate appreciation rate for the corporations' properties. There is no basis for disturbing the Referee's determination (*see F.P.D. Realty Corp.*, 267 AD2d at 112).

Petitioner's argument that prejudgment interest should be 9% instead of 4%, based upon respondent's misconduct, is rejected. Interest is not awarded as a penalty or to punish a party, it is a cost imposed for having the use of another party's money over a period of time (*see Manufacturer's & Traders Trust Co. v Reliance Ins. Co.*, 8 NY3d 583 [2007]).

The motion court correctly held that respondent did not engage in "fraudulent and perjurious conduct during the course of judicial proceedings" regarding management fee receivables (*see 317 W. 87 Assoc. v Dannenberg*, 159 AD2d 245, 246 [1st Dept 1990]).

We have considered the parties' remaining arguments and find them unavailing. Concur—Gonzalez, P.J., Saxe, Catterson, Acosta and Gische, JJ.