[32 NYS3d 264]

ROBERT J. CONGEL et al., as Members of the Executive Committee of, and on Behalf of, POUGHKEEPSIE GALLERIA COMPANY, Respondents-Appellants, v MARC A. MALFITANO, Appellant-Respondent.

Second Department, May 18, 2016

## APPEARANCES OF COUNSEL

*Bousquet Holstein PLLC*, Syracuse (*James L. Sonneborn* and *Michael D. Gadarian* of counsel), for appellant-respondent.

*Goodwin Procter LLP*, New York City (*Anthony S. Fiotto* of counsel; *Kristen A. Kearney* on the brief), and *Corbally, Gartland and Rappleyea, LLP*, Poughkeepsie (*Vincent L. DeBiase* of counsel), for respondents-appellants (one brief filed).

**OPINION OF THE COURT**

DICKERSON, J.

Introduction

Partnership Law § 69 (2) (c) (II) entitles a partner who has wrongfully caused the dissolution of a partnership to be paid the "value" of his or her interest in the partnership less any damages caused to his or her copartners by the dissolution. Among other things, this appeal requires us to consider whether, in determining the value of a partnership interest for purposes of Partnership Law § 69 (2) (c) (II), a "minority discount" may be applied to reflect the lack of control a minority partner has in the operations of the partnership. This issue is one of first impression in the Appellate Division, Second Department. We conclude that such a discount may be applied, and that it should have been applied under the facts of this case.

Factual and Procedural Background

In 1985, the parties entered into a written agreement to form the Poughkeepsie Galleria Company Partnership. The purpose of the partnership was to own and operate the Poughkeepsie Galleria Shopping Center, a 1.2 million square foot shopping mall with tenants including major department stores such as Macy's and JCPenney. The defendant was a general partner who owned a 3.08% interest in the partnership. In a letter dated November 24, 2006, the defendant advised his fellow partners that he had unilaterally elected to dissolve the partnership, claiming that there had been a "fundamental breakdown in the relationship between and among us as partners."

In 2007, the plaintiffs, as members of the partnership's executive committee, commenced this action against the defendant alleging that he had wrongfully elected to unilaterally dissolve the partnership in violation of the partnership agreement, and that he had done so in order to force the partnership "to buy out . . . his interest at a steep premium." The plaintiffs sought, inter alia, to recover damages for breach of contract, and a judgment declaring that the defendant wrongfully dissolved the partnership. As relevant to this appeal, in his answer the defendant asserted a counterclaim pursuant to Partnership Law § 69. Subdivision (2) (c) (II) of that statute provides that in the event of a wrongful dissolution, if the partners who have not caused the wrongful dissolution elect to continue the partnership's business in the same name, the

partner who has caused the wrongful dissolution shall have "the value of his interest in the partnership, less any damages caused to his copartners by the dissolution, ascertained and paid to him in cash . . . but in ascertaining the value of the partner's interest the value of the good-will of the business shall not be considered" (Partnership Law § 69 [2] [c] [II]).

Shortly after the commencement of this action, the defendant moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. In support of his motion, the defendant contended that he was free to dissolve the partnership under Partnership Law § 62 (1) (b) because the partnership was at will and of indefinite duration. The Supreme Court rejected the defendant's contention, and denied his motion to dismiss. In a decision and order dated April 21, 2009, this Court concluded that the Supreme Court had properly denied the defendant's motion (*see Congel v Malfitano*, 61 AD3d 807, 808-809 [2009]). In doing so, this Court concluded that the partnership was not at will since the partnership agreement, which indicated that the partnership shall dissolve upon an election of a majority of the partners, provided for a "definite term" within the meaning of Partnership Law § 62 (1) (b) (*see id.* at 808).

Meanwhile, in an order dated May 29, 2008, the Supreme Court granted the plaintiffs summary judgment on their first cause of action, which was for a judgment declaring that the defendant wrongfully dissolved the partnership, and on their second cause of action, which was to recover damages for breach of contract. In a separate prior decision and order, also dated April 21, 2009, this Court concluded that the plaintiffs had properly been granted summary judgment on those claims, noting that the terms of the subject partnership agreement were clear and unambiguous, and reiterating its conclusion that the partnership created by the partnership agreement was not an at-will partnership (*see Congel v Malfitano*, 61 AD3d 810, 811 [2009]). This Court also determined that the plaintiffs demonstrated that the defendant dissolved the partnership in contravention of the partnership agreement, and that the defendant failed to raise a triable issue of fact in opposition (*see id.* at 811).

The Supreme Court subsequently conducted a nonjury trial on the issue of the damages incurred by the plaintiffs as a result of the wrongful dissolution of the partnership, and the issue of the value of the defendant's interest in the partner-

ship, for the purpose of determining the amount that the defendant was entitled to recover on his counterclaim pursuant to Partnership Law § 69. At the outset of the trial, the parties stipulated that the unadjusted value of the defendant's total interest in the partnership was $4,850,000 as of November 24, 2006, the date of the wrongful dissolution of the partnership. The plaintiffs and the defendant both offered expert testimony on issues including whether the stipulated value of the defendant's interest in the partnership included a component of goodwill for which a deduction would be required pursuant to Partnership Law § 69 (2) (c) (II), and whether the defendant's interest should be reduced to account for marketability and the defendant's status as a minority partner. At the conclusion of the trial, the Supreme Court determined that the value of the defendant's interest in the partnership, minus the damages to the plaintiffs caused by the defendant's wrongful dissolution of the partnership, was $857,164.75. In reaching its determination as to value, the court, inter alia, applied a 15% discount for goodwill, and a 35% discount to account for the limited marketability of the defendant's interest. However, the court declined to apply a minority discount, concluding that it was not permitted to do so based upon case law involving valuation of a minority shareholder's stock in a close corporation. The court also reduced the award by the amount of legal expenses it determined had been reasonably incurred by the plaintiffs due to the defendant's wrongful dissolution of the partnership. The parties now appeal and cross-appeal from an amended judgment in favor of the defendant and against the plaintiffs in the principal sum of $857,164.75.

Analysis

### Whether to Revisit the Wrongfulness Determination

Initially, the defendant contends that this Court should overturn its prior determination that he wrongfully dissolved the partnership in light of the Court of Appeals decision of *Gelman v Buehler* (20 NY3d 534 [2013]), which was decided after this Court made its determination on this issue. In *Gelman*, the parties allegedly entered into an oral agreement to continue a partnership until the partners found a business with growth potential, acquired it, and increased its value until it could be sold at a profit (*see id.* at 536). The Court of Appeals held that this alleged agreement did not contain a "definite term" of duration or a "particular undertaking" to be

achieved within the meaning of Partnership Law § 62 (1) (b), and was thus dissolvable at will (*see Gelman v Buehler*, 20 NY3d at 537-539).

■ Contrary to the defendant's contention, *Gelman* does not require this Court to depart from the law of the case and revisit its prior determination that he wrongfully dissolved the partnership. "[A]n appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court" (*Matter of 24 Franklin Ave. R.E. Corp. v Heaship*, 101 AD3d 1034, 1036 [2012] [internal quotation marks omitted]). "The law of the case doctrine forecloses re-examination of a question previously determined by an appellate court in the same action, absent a showing of subsequent evidence or change of law, or extraordinary circumstances . . . warrant[ing] a departure from the law of the case" (*id.* at 1036 [citations and internal quotation marks omitted]). The facts of *Gelman*, involving an alleged oral partnership agreement which lacked a definite term of duration (*see Gelman v Buehler*, 20 NY3d at 536, 539), are plainly distinguishable from the facts of this case. In contrast to *Gelman*, the written partnership agreement here specified that the partnership would continue until terminated by a majority vote of the partners, and was thus not dissolvable at will by a single partner. Thus, the defendant presents no compelling reason for this Court to depart from the law of the case doctrine in what represents a largely factual determination, as opposed to "a decision on a narrow point of law that clearly requires reversal in view of subsequent developments in case law" (*Miller v Schreyer*, 257 AD2d 358, 361 [1999]). Accordingly, we decline to overturn our prior determination that the defendant wrongfully dissolved the partnership.

## Minority Discount

At trial, the plaintiffs' valuation expert testified that, in determining the fair market value of the defendant's 3.08% interest in the partnership, a "minority discount" should be applied to reflect the lack of control that a minority owner has in the operations of the partnership. Based upon a variety of factors, including sales of comparable interests and the effect of certain provisions of the subject partnership agreement restricting the rights of minority owners, the plaintiffs' expert testified that the appropriate minority discount in this case was 66%. The defendant's valuation expert testified that

although a minority discount would ordinarily be applied to determine the fair market value of the defendant's interest, he did not apply a minority discount in his valuation in this case because he "was advised, under the relevant statutes, that a minority discount was not applicable."

> "In reviewing a determination made after a non-jury trial, the power of this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial court had the advantage of seeing and hearing the witnesses" (*Zutrau v ICE Sys., Inc.*, 128 AD3d 1058, 1060 [2015] [internal quotation marks omitted]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]).

Here, in making its determination as to the value of the defendant's interest in the partnership for the purpose of ascertaining how much the defendant was entitled to recover pursuant to Partnership Law § 69 (2) (c) (II), the Supreme Court declined to apply a minority discount. "A minority discount is an adjustment to account for a lack of control" (*Brown v Arp and Hammond Hardware Co.*, 141 P3d 673, 679 [Wyo 2006]). In the context of valuing shares of corporate stock, "[t]he theory behind a minority discount is that non-controlling shares of stock are not worth their proportionate share of the [company's] value because they lack voting power to control corporate actions" (*id.* [internal quotation marks omitted]). "And like a corporate minority shareholder, a limited partner generally has no voice in the management of [a] partnership and cannot control investment policies or partnership distribution, so a minority discount may apply to the value of [a partnership] interest as well" (*Estate of Godley v C.I.R.*, 286 F3d 210, 215 [4th Cir 2002] [internal quotation marks omitted]).

In declining to apply a minority discount in this case, the Supreme Court cited *Matter of Friedman v Beway Realty Corp.* (87 NY2d 161 [1995]) and *Matter of Murphy v United States Dredging Corp.* (74 AD3d 815 [2010]). *Matter of Friedman* involved a proceeding commenced by a minority shareholder in a close corporation pursuant to Business Corporation Law § 623, which gives "minority stockholders the right to withdraw from a corporation and be compensated for the value of their interests when the corporate majority takes significant action

deemed inimical to the position of the minority" (*Matter of Friedman v Beway Realty Corp.*, 87 NY2d at 167). Business Corporation Law § 623 provides that such a shareholder is entitled to be paid the "fair value" of his or her shares (Business Corporation Law § 623 [e]). *Matter of Murphy* involved a determination pursuant to Business Corporation Law § 1118, which "governs the rights of minority stockholders when the corporation has elected to purchase their interests, also at 'fair value', following their petition for corporate dissolution under Business Corporation Law § 1104-a for oppressive majority conduct" (*Matter of Friedman v Beway Realty Corp.*, 87 NY2d at 168; *see Matter of Murphy v United States Dredging Corp.*, 74 AD3d at 817).

In *Matter of Friedman*, the Court of Appeals held that a minority discount should not be applied in determining the "fair value" of a dissenting shareholder's shares within the meaning of Business Corporation Law §§ 623 and 1118. The Court of Appeals explained that imposing a minority discount would conflict with equitable principles of corporate governance because such a discount

> "would necessarily deprive minority shareholders of their proportionate interest in a going concern, as guaranteed by our [prior decisions]. Likewise, imposing a minority discount . . . would result in minority shares being valued below that of majority shares, thus violating our mandate of equal treatment of all shares of the same class in minority stockholder buyouts" (*Matter of Friedman v Beway Realty Corp.*, 87 NY2d at 169).

The Court of Appeals further noted that the application of a minority discount in proceedings under Business Corporation Law §§ 623 and 1118 would "unfairly enrich[ ] the majority stockholders who may reap a windfall from the appraisal process by cashing out a dissenting shareholder" and would "inevitably encourage oppressive majority conduct, thereby further driving down the compensation necessary to pay for the value of minority shares" (*id.* [internal quotation marks omitted]). Accordingly, while the Court of Appeals acknowledged that the "financial reality that minority shares in a close corporation are worth less because they represent only a minority" "may have validity when corporate stock is valued for other purposes, it overlooks the statutory objective here of achieving a *fair* appraisal remedy for dissenting minority shareholders" (*id.* at 167). In *Matter of Murphy*, this Court, citing *Matter of Friedman*, stated that "New York law does not permit a minor-

ity discount" (*Matter of Murphy v United States Dredging Corp.*, 74 AD3d at 818 [internal quotation marks omitted]).

However, the concerns expressed by the Court of Appeals in declining to mandate the imposition of a minority discount in fixing the fair value of a dissenting shareholder's stock are not implicated here. Unlike *Matter of Friedman* and *Matter of Murphy*, this case does not involve a determination of the "fair value" of a dissenting shareholder's shares pursuant to Business Corporation Law §§ 623 and 1118, but rather, involves the determination of the "value" of the shares of a partner who has wrongfully caused the dissolution of a partnership pursuant to Partnership Law § 69 (2) (c) (II). As the Appellate Division, First Department, has observed, applying a minority discount in the context of valuing a partnership interest "would not contravene the distinctly corporate statutory proscription (Business Corporation Law § 501 [c]) against treating holders of the same class of stock differently, or undermine the remedial goal of the appraisal statutes to protect shareholders from being forced to sell at unfair values, or inevitably encourage oppressive majority conduct" (*Vick v Albert*, 47 AD3d 482, 483-484 [2008]). Moreover, the Court of Appeals' concern that imposing a minority discount in valuing a dissenting shareholder's stock would encourage oppressive majority conduct is not relevant here, where the dissolution was caused not by any action on the part of the majority, but rather, was caused by the "wrongful[ ]" conduct of a minority partner (Partnership Law § 69 [2] [c] [II]).

In *Anastos v Sable* (443 Mass 146, 819 NE2d 587 [2004]), the Supreme Judicial Court of Massachusetts, in interpreting a partnership statute that is identical in all relevant respects to the one at issue in this case, held that, in ascertaining the value of the interest of a partner who wrongfully caused a dissolution for the purposes of section 38 (2) (c) (II) of chapter 108A of the General Laws of Massachusetts, the Massachusetts equivalent of Partnership Law § 69 (2) (c) (II), the trial court properly applied a minority discount in order to determine the market value of the partner's minority interest in a going concern, rather than determining the partner's proportionate share of the liquidation value of the partnership's assets (*see Anastos v Sable*, 443 Mass at 149-152, 819 NE2d at 590-592). In *Anastos*, the plaintiff and the defendants were members of a partnership formed to own and operate a manufacturing facility. After the plaintiff dissolved the partnership in contraven-

tion of the partnership agreement, the defendants elected to continue the partnership business rather than liquidate. Following a nonjury trial, the trial court determined that the value of the net assets of the partnership was $2,494,005. However, the trial court determined that because the partnership was a going concern, the value of the plaintiff's one-third minority interest in the partnership was not necessarily equal to one third of the liquidation value. Accordingly, in determining the value of the plaintiff's interest in the partnership, the trial court applied a minority discount to reflect that there was "no ready market for the purchase of a minority interest in a general partnership whose primary asset is real estate where the partnership agreement contains limitations and restrictions on the control that any minority owner can exercise" (*Anastos v Sable*, 443 Mass at 147-148, 819 NE2d at 589). On appeal to the Supreme Judicial Court of Massachusetts, the highest court in that state, the plaintiff contended that a minority discount was improperly applied because the valuation of his interest should have been made based on the liquidation value of the partnership's assets. The Supreme Judicial Court rejected this contention, and affirmed the trial court, stating:

"In this case, the remaining partners chose to exercise their statutory right to continue the partnership business for the remainder of the partnership term, so the partnership business is not 'winding up' and must therefore be treated as a going concern. Because the plaintiff cannot compel liquidation of the business at the point of dissolution, we read [Massachusetts General Laws, chapter 108A, § 38 (2) (c) (II)] as offering a nonliquidation based method of calculating the value of his partnership interest. The statute's exclusion of good will from the valuation of the wrongfully dissolving partner's interest supports this reading, as good will is an asset only if the partnership business is a going concern. Were it meant to regard the partnership business as assets to be liquidated, good will need not have been mentioned" (*Anastos v Sable*, 443 Mass at 152, 819 NE2d at 592).

Accordingly, the Supreme Judicial Court upheld the trial court's application of a minority discount. We find the reasoning of the Supreme Judicial Court to be sound. Here, as in *Anastos*, the partnership remains a going concern, and the de-

fendant has no right to compel a liquidation sale of the partnership's shopping mall and receive a proportionate share of the liquidation value of that asset. Under these circumstances, a minority discount may properly be applied to account for the defendant's lack of control in the partnership as a going concern.

We therefore conclude that the Supreme Court should have applied a minority discount in determining the value of the defendant's interest in the partnership for the purpose of determining the amount that the defendant was entitled to recover on his counterclaim pursuant to Partnership Law § 69. We further find the plaintiffs' expert's testimony that a 66% minority discount was appropriate to be credible and supported by the record.

### Remaining Contentions

In its determination as to the amount of damages that the defendant caused to the plaintiffs by his wrongful dissolution of the partnership, the Supreme Court included the reasonable amount of certain legal expenses incurred by the plaintiffs. Contrary to the defendant's contention, these expenses were recoverable expenditures directly occasioned and made necessary by the defendant's breach of the partnership agreement, and were thus properly included as damages (*see Aero Garage Corp. v Hirschfeld*, 185 AD2d 775, 776 [1992]; *City of Elmira v Larry Walter, Inc.*, 150 AD2d 129, 133 [1989], *affd* 76 NY2d 912 [1990]; *cf. RAD Ventures Corp. v Artukmac*, 31 AD3d 412, 415 [2006]).

In ascertaining the value of the defendant's interest in the partnership for the purpose of determining the amount that the defendant was entitled to recover on his counterclaim pursuant to Partnership Law § 69, the Supreme Court properly applied a discount reflecting the value of the partnership business's goodwill (*see* Partnership Law § 69 [2] [c] [II]). The evidence supported the Supreme Court's determination that the subject property was not, as the defendant contended, a mere real property holding company (*cf. Cohen v Cohen*, 279 AD2d 599, 600 [2001]; *Matter of Cinque v Largo Enters. of Suffolk County*, 212 AD2d 608, 610 [1995]), but rather, had goodwill in connection with the operation of the shopping mall that it owned.

The parties' remaining contentions are barred by the law of the case doctrine or are without merit.

Conclusion

For the foregoing reasons, the amended judgment is modified, on the law and the facts, by deleting the provision thereof in favor of the defendant and against the plaintiffs in the principal sum of $857,164.75, as so modified, the amended judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Dutchess County, for a new calculation of damages that incorporates a 66% minority discount applied to the value of the defendant's interest in the partnership in accordance herewith, and for the entry of an appropriate second amended judgment thereafter.

Dillon, J.P., Hall and LaSalle, JJ., concur.

Ordered that the appeal from the judgment is dismissed, as the judgment was superseded by the amended judgment; and it is further,

Ordered that the amended judgment is modified, on the law and the facts, by deleting the provision thereof in favor of the defendant and against the plaintiffs in the principal sum of $857,164.75; as so modified, the amended judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Dutchess County, for a new calculation of damages that incorporates a 66% minority discount applied to the value of the defendant's interest in the partnership in accordance herewith, and for the entry of an appropriate second amended judgment thereafter; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs.